UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| L. STEPEHN RIDENOUR and VICKEY J. RIDENOUR,<br><br>                Plaintiffs,<br>  v.<br><br>BANK OF AMERICA N.A. and BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP,<br><br>                Defendants. | Case No. 2:13-CV-00317-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it a motion to dismiss filed by the defendant Bank of America, motions to take judicial notice filed by both parties, and a motion to substitute a party filed by plaintiffs Stephen and Vickey Ridenour. The motions are fully briefed and at issue. For the reasons explained below, the Court will deny the motion to dismiss, grant the motions for judicial notice, and grant in part the motion to substitute.

## FACTS

The Ridenours allege that the Bank breached its agreement to modify their home mortgage loan, strung them along with false promises, destroyed their credit, and caused them emotional distress. The Bank denies these charges and seeks to dismiss this action.

In July 2005, the Ridenours took out a home loan, secured by a deed of trust, to finance the purchase of their house on the Spokane River near Post Falls, Idaho. By 2008, the Ridenours were experiencing financial difficulty. When Stephen Ridenour contacted the Bank regarding the trouble, he was advised by a Bank representative to stop making payments on his loan so that the Ridenours could be considered for a loan modification. The Ridenours followed that advice.

The Ridenours filed the necessary paperwork, and on June 8, 2009, they received from the Bank a loan modification agreement. The loan modification agreement contained an unpaid principal balance of $572,230.52, set monthly payments at $3,755.10, fixed the interest rate at 6.375%, and assigned a maturity date of August 1, 2035. The Ridenours noticed that their names were misspelled on the loan modification agreement, so they corrected the misspelling and returned the loan modification agreement otherwise unchanged.

Days later, the Ridenours received a letter from the Bank claiming that the Ridenours had impermissibly altered the loan modification agreement by correcting the misspelling and that the Bank was therefore "rescinding the agreement." *See First Amended Complaint (docket no. 22)* at ¶ 21. Confused by the rejection, Stephen Ridenour contacted the Bank, and a representative promised Stephen that the Bank would expedite a new loan modification agreement with the correct spelling of "Ridenour" in time for the Ridenours to return the agreement before the deadline for accepting the loan modification offer, July 5, 2009. But the Bank failed to do anything despite the

Ridenours' repeated attempts to prompt some action. The deadline passed with the Bank never having sent the corrected loan modification agreement. On July 29, 2009, the Ridenours filed a voluntary petition for Chapter 7 bankruptcy.[1] In their petition, the Ridenours listed their home as an asset and disclosed that the Bank was the secured creditor of the home. On December 5, 2009, the bankruptcy court discharged the Ridenours from bankruptcy. The bankruptcy did not discharge the debt owed by the Ridenours to the Bank.

Following the Bank's rejection in June of 2009 of the original loan modification agreement, the Bank negotiated over either a resurrection of that agreement or a new one – it is not clear which was the case from the allegations in the First Amended Complaint. At any rate, over the next several months, the Ridenours were shuttled between innumerable Bank representatives who gave conflicting accounts of the modification's status but were united in demanding that the Ridenours provide more information. Finally, on November 30, 2010, the Bank denied the Ridenours' request for a new loan modification agreement. The Bank stated that the request was denied due to a negative net present value ("NPV") for the home, and informed the Ridenours that they had thirty days to request the data the Bank used to calculate the NPV.

---

[1] The Court takes judicial notice of the Ridenours' bankruptcy petition, the Ridenours' statement of intention, the order discharging the Ridenours from bankruptcy, the parties' stipulation to dismiss case no. 2:11-cv-00627-BLW-MHW without prejudice, and the Court's prior order of dismissal without prejudice. *Fed. R. Evid.* 201(b)(2); *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131-32 (9th Cir. 2012). Consideration of these documents will not convert the Bank's motion to dismiss into a motion for summary judgment. *United States v. Ritche*, 342 F.3d 903, 907-08 (9th Cir. 2003).

The Ridenours promptly sent a written request for the NPV data so that they could appeal the denial. Six months later, the Ridenours received the NPV data, riddled with errors. The Ridenours wrote to correct the NPV data and continue the loan modification appeal process. The Bank denied the Ridenours' appeal. The Bank again cited the NPV as a reason for the denial, and the Ridenours again challenged the accuracy of the NPV data. While the Ridenours' second challenge to the NPV value was pending, the Bank notified the Ridenours that their home was scheduled to be sold at a trustee's sale.

On October 27, 2011, the Ridenours sued the Bank on various contract and tort theories for the Bank's alleged mishandling of a home loan modification, and obtained an injunction enjoining the pending foreclosure. That suit was later dismissed by stipulation as the parties agreed to pursue loss mitigation efforts.

When those efforts failed, the Ridenours filed this action on July 19, 2013. After the Bank moved to dismiss the complaint, Judge Tallman – sitting by designation from the Circuit – issued an opinion in which he: (1) took judicial notice of documents filed in other courts and county recorders' offices; (2) dismissed all defendants except the Bank and BAC Home Loans, and held that they are a single entity; (3) dismissed without prejudice the fraud and promissory estoppel claims, granting the Ridenours' leave to amend those claims; (4) barred recovery on the negligent infliction of emotional distress claim for any act occurring before October 27, 2009, and held that the Ridenours alleged an act within that time frame by asserting that the bank foreclosed on their home on September 17, 2010; (5) held that the negligent infliction claim could not be based on a

violation of the certain guidelines, but also held that the Ridenours "could rely on the general duty to avoid foreseeable risks of harm" and allowed them to so amend their complaint; (6) held that by correcting their names on the loan modification agreement, the Ridenours did not turn their acceptance into a counteroffer; and (7) held that the Ridenours have properly pled damages by alleging that they lost the benefit of the agreement's lower interest rate. *Ridenour v. Bank of Am., N.A.*, 23 F.Supp.3d 1201, 1206 (D. Idaho 2014).

Judge Tallman allowed the Ridenours to file a First Amended Complaint to address deficiencies, and after that was filed, the Bank filed its second motion to dismiss, which is the motion now before the Court. The Bank argues that (1) the Ridenours claims are precluded by their discharge in bankruptcy; (2) their claims for fraud and negligent infliction of emotional distress are time-barred; (3) their claim for promissory estoppel fails for lack of detrimental reliance; and (4) their claim for negligent infliction fails because the Bank owed them no duty.

The Court will examine each of these arguments below.

## ANALYSIS

### Effect of Bankruptcy

The Bank argues that the Ridenours' bankruptcy precludes them from filing any claim that accrued prior to the bankruptcy. Those claims are the property of the bankruptcy estate, not the Ridenours, and in any event, the Ridenours are estopped from pursuing those claims because they failed to list them in the bankruptcy, argues the Bank.

When the Ridenours filed their bankruptcy petition, a bankruptcy estate was created. *See* 11 U.S.C. § 541(a); *Cusano v. Klein*, 264 F.3d 936, 945 (9th Cir. 2001). Throughout the bankruptcy proceedings, the Ridenours had a duty to schedule as assets on their bankruptcy petition all of their accrued causes of action against the Bank. *See Cusano*, 264 F.3d at 945; *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 785 (9th Cir. 2001).

The Ridenours' bankruptcy was filed in July of 2009 and closed in December of 2009. The Bank points out that the Ridenours' claims are based in large part on the Bank's letter of June 2009 rejecting the loan modification agreement on the ground that the Ridenours modified the spelling of their names. The Bank argues that because these claims accrued in June of 2009, they existed during the pendency of the bankruptcy, should have been listed as assets, and now belong to the Trustee rather than the Ridenours.

The Ridenours respond that for more than a year after that June 2009 letter, and for many months even after the bankruptcy had closed, the Bank continued to reassure them that a loan modification was forthcoming. The First Amended Complaint describes a dizzying series of representations by legions of Bank employees – a different one each time – promising the Ridenours that modification documents would be sent and requesting reams of additional information. If these allegations are true, and the Court must assume their truth in this proceeding, the Bank was misleading the Ridenours into believing that it would ultimately accept a modification. Would it be fair to hold that the

Ridenours should have included their claims against the Bank in their bankruptcy when throughout those proceedings the Bank was misleading the Ridenours into believing the Bank would work with them?

At the same time, both sides allege that the Bank clearly rescinded the original loan modification agreement in June of 2009. What is not clear from the First Amended Complaint is whether the Bank's dizzying series of alleged misrepresentations thereafter related to a second and different modification agreement, or a resurrection of the original modification agreement. It makes a big difference. If it was the former, then the Ridenours should have included in the bankruptcy their claims asserting their entitlement to the original modification agreement – they knew the original agreement was dead and gone by June of 2009. But if it was the latter, the Ridenours did not realize when they filed for bankruptcy that they had any legal dispute over the original modification agreement because the Bank was promising to resurrect that agreement, and continued to do so throughout the bankruptcy proceedings.

If the Ridenours should have listed their claims in the bankruptcy, those claims remain the property of the bankruptcy estate. *See Cusano*, 264 F.3d at 946. The Bank rightly concedes, however, that the Ridenours' claims are not property of the bankruptcy estate to the extent that any claim accrued after the Ridenours were discharged from bankruptcy. These circumstances have two consequences for the Ridenours.

First, in addition to satisfying the Article III requirements of standing, the Ridenours must, as a prudential matter, "assert [their] own legal interests" in a suit.

*Dunmore v. United States*, 358 F.3d 1107, 1112 (9th Cir. 2004). If the bankruptcy estate owns pre-petition causes of action, it is the bankruptcy estate, and not the Ridenours, that is the real-party-in-interest. *Id.*

Second, the Ridenours may be estopped from asserting pre-discharge claims. Ordinarily "[i]n the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements." *Hamilton*, 270 F.3d at 784. Estoppel "protect[s] the integrity of the bankruptcy process," which "depends on full and honest disclosure by debtors of all of their assets." *Id.* at 785 (quoting *In re Costal Plains*, 179 F.3d 197, 208 (5th Cir. 1999) (emphasis omitted)).

In *Dunmore*, the Ninth Circuit recognized that both consequences may be addressed by allowing the debtors an opportunity to reopen the bankruptcy proceeding. 358 F.3d at 1112-13 & n.3. Indeed, the Ridenours have reopened their bankruptcy. *See Ridenour Brief (Dkt. No. 28)* (representing that "[t]he bankruptcy case has been re-opened").

With the bankruptcy reopened, the trustee would be afforded the opportunity "to ratify, join, or be substituted into th[is] action." *Fed. R. Civ. P.* 17(a)(3). If the trustee ratifies the Ridenours' prosecution of the suit by formally abandoning those claims to the Ridenours, *see Turner v. Cook*, 362 F.3d 1219, 1226 (9th Cir. 2004), the Ridenours would be the proper plaintiffs at that time, thus alleviating any prudential concerns over the Ridenours' standing. Furthermore, this approach protects the integrity of the

bankruptcy proceeding by "giving the bankruptcy trustee an opportunity to [retain and] administer the unscheduled claims." *Dunmore*, 358 F.3d at 1113 n.3.

The Bank resists this result by citing to *McCallister v. Dixon*, in which the Idaho Supreme Court held that "reopening bankruptcy proceedings will *not* cure non-disclosure to a bankruptcy court so as to avoid application of judicial estoppel." 303 P.3d 578, 584 (Idaho 2013). However, *McCallister* does not stand for the proposition that reopening a bankruptcy proceeding should not be allowed under any circumstances.[2] What concerned the Idaho Supreme Court was the potential gamesmanship of the bankruptcy proceedings by debtors turned plaintiffs. *Id.* at 584. The path this case will take under Rule 17(a)(3) addresses these concerns by affording the bankruptcy trustee the right of first refusal over these claims. It also alleviates the concern, raised in *McCallister*, that "alleged tortfeasors would not be held responsible for their torts." *See id.* at 585.

Therefore, the Court will grant the Ridenours sixty (60) days from the date this order is filed to obtain the bankruptcy trustee's formal abandonment of the pre-discharge claims or to amend their complaint to substitute the trustee as plaintiff in this case. The Court realizes that the Ridenours have already moved to substitute the trustee as plaintiff in this case. However, the Court believes the more prudent course is to see if the Ridenours can secure the trustee's abandonment of the pre-discharge claims before the substitution occurs.

---

[2] To the contrary, the court approved of the substitution of the bankruptcy trustee as plaintiff in that case. *Id.* at 585.

## Tort Claims

The Bank argues that the Ridenours' claims for fraud and negligent infliction of emotional distress are barred by the relevant statutes of limitations. "A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when the running of the statute is apparent on the face of the complaint. [A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Von Saher v. Norton Simon Museum of Art*, 592 F.3d 954, 969 (9th Cir. 2009).

The Bank further argues that the Ridenours failed to properly plead their claims for promissory estoppel and negligent infliction of emotional distress. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 557.

The Supreme Court identified two "working principles" that underlie *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, the court need not accept as true, legal

conclusions that are couched as factual allegations. *Id.* Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. Second, to survive a motion to dismiss, a complaint must state a plausible claim for relief. *Id.* at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## Fraud

There is a three-year statute of limitations for fraud claims in Idaho. I.C. § 5-218(4). The parties agree the relevant filing date to measure the limitations period is October 27, 2011, the date that the Ridenours filed their first action against the Bank. Thus, to be timely, the Ridenours' fraud claim must have accrued after October 27, 2008. The Bank argues it accrued two months earlier in August of 2008 when the Ridenours defaulted on their home loan, and that this action is therefore untimely.

The Court disagrees. The Ridenours' complaint alleges multiple fraudulent statements by the Bank in 2009 and thereafter concerning the rescission of the agreement and subsequent promises to reinstate a modification. These fraud allegations all occurred after October 27, 2008. Thus, the Court denies the Bank's attempt to dismiss the fraud claim as untimely.

## Promissory Estoppel

The Bank claims the Ridenours have failed to properly plead their claim for promissory estoppel. Specifically, the Bank alleges that the Ridenours have failed to

allege how they detrimentally relied on the Bank's promises. The Court disagrees. The First Amended Complaint alleges that the Ridenours relied on the Bank's promises when they followed the Bank's direction to default on their loan. Following that direction from the Bank was detrimental, the Ridenours allege in the First Amended Complaint, because it lowered their credit rating, lengthened their loan payoff time, saddled them with fees and charges, increased the interest they were paying, and ultimately led to foreclosure rather than to the promised modification of the loan. This shows that the Ridenours sufficiently pled detrimental reliance.

**Negligent Infliction of Emotional Distress**

There is a two-year statute of limitations for a claim of negligent infliction of emotional distress, measured "as of the time of the occurrence, act or omission complained of." I.C. § 5-219(4). Negligent infliction of emotional distress is generally characterized as a continuing tort. *See Johnson v. McPhee*, 210 P.3d 563, 573 (Id.Ct.App. 2009). A continuing tort is "one inflicted over a period of time; it involves a wrongful conduct that is repeated until desisted, and each day creates a separate cause of action." *Curtis v. Firth*, 850 P.2d 749, 754 (Idaho 1993). "Only when such tortious conduct end does the limitations period begin to run." *Johnson*, 210 P.3d at 571.

As stated previously, the parties agree that the filing date of this action is actually October 27, 2011, when the Ridenours filed their first action against the Bank. Thus, applying the two year limitations period, any events occurring prior to October 27, 2009, could not be the basis for the negligent infliction claim. The Bank argues that the

Ridenours' claim is premised upon the Bank's instruction to default on their loan payments and the Bank's repudiation of the 2009 loan modification agreement, all of which occurred before October 27, 2009, rendering the negligent infliction claim untimely.

This takes an overly restrictive view of the Ridenours' claim. They allege that Bank's negligence continued through the second loan modification process and appeal and included the wrongful noticing of their home for a trustee's sale. These allegations occurred well after October 27, 2009. Therefore, the Ridenours' negligent infliction claim is timely.

The Bank argues next that it owed no duty of care to the Ridenours as a lender. Not so. As Judge Tallman recognized in his prior order, the Bank owed the Ridenours a general duty to avoid foreseeable risks of harm. *Ridenour v. Bank of Am., N.A.*, 23 F.Supp.3d 1201, 1206 (D. Idaho 2014). It is true that lenders are not fiduciaries of borrowers, as the Bank argues. *See Black Canyon Racquetball Club, Inc. v. Idaho First Nat'l Bank, N.A.*, 804 P.2d 900, 905 (Idaho 1991). However, the duty to act in a reasonable manner arises when a person or entity "voluntarily undertakes to perform an act, having no prior duty to do so," and it exists independent of any fiduciary relationship. *See Baccus v. Ameripride Services, Inc.*, 179 P.3d 309, 313 (Id.Sup.Ct. 2008) (internal quotation mark omitted); *see also Cumis Ins. Society, Inc. v. Massey*, 318 P.3d 932, 948 (Id.Sup.Ct. 2014) (by certifying that third parties could rely on his appraisal, the appraiser had a duty to prepare the appraisal in a non-negligent manner). Thus, when the Bank

engaged with the Ridenours in the loan modification process, it had a duty to do so in a non-negligent manner. *See Alvarez v. BAC Home Loans Servicing, L.P.,* 228 Cal.App.4th 941, 948-49 (2014) (holding that once a bank voluntarily undertakes a loan modification, it has a duty to carry out that process in a reasonably prudent manner).

# ORDER

Pursuant to the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that Defendants' Motion to dismiss (docket no. 23) is DENIED.

IT IS FURTHER ORDERED, that Defendants' Motion to Take Judicial Notice (docket no. 24) is GRANTED.

IT IS FURTHER ORDERED, that Plaintiffs' Motion to Take Judicial Notice (docket no. 29) and corrected motion (docket no. 33) are GRANTED.

IT IS FURTHER ORDERED, that Plaintiffs' Motion to Substitute (docket no. 31) is GRANTED IN PART AND DENIED IN PART. The Court will grant the Ridenours sixty (60) days from the date this order is filed to obtain the bankruptcy trustee's formal abandonment of the pre-discharge claims or to amend their complaint to substitute the trustee as plaintiff in this case.



DATED: March 25, 2015

_____
B. Lynn Winmill
Chief Judge
United States District Court

**MEMORANDUM DECISION AND ORDER - 15**